UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ALABAMA
MIDDLE DIVISION

**DYNAMIC COLLISION, LLC,**
**et al.,**
    **Plaintiffs,**

**v.**

**CITY OF GADSDEN, ALABAMA,**
**et al.,**
    **Defendants.**

Case No. 4:21-cv-01583-CLM

## MEMORANDUM OPINION

Plaintiff Dynamic Collision, LLC ("Dynamic") sues Defendants City of Gadsden, Alabama and the Gadsden Airport Authority, alleging that a proposed rendering plant violates Gadsden zoning ordinances and deed restrictions that apply to the land proposed for the rendering plant. Defendant-Intervenor Pilgrim's Pride Corporation has removed the case to this court, arguing that the court has federal question jurisdiction over at least one of Dynamic's claims.

For the reasons stated within, the court finds that it lacks subject matter jurisdiction over this case. So the court will **REMAND** this case to the Circuit Court of Etowah County, Alabama.

## BACKGROUND

This case involves a challenge to Gadsden and Pilgrim's plan to develop a rendering plant on an 85-acre tract of land that the Gadsden Airport Authority owns. Dynamic's initial claims were that the proposed rendering plant violated Gadsden zoning ordinances, which, among other things, denied Dynamic its right to procedural due process. Soon after Dynamic filed this case in the Circuit Court of Etowah County, Gadsden removed the case to this court, asserting that Dynamic was bringing its procedural due process claim under the 14th Amendment to the U.S. Constitution. The court then remanded this case, finding that Dynamic had brought its procedural due process claim under state law only.

Discovery then began in state court. On November 15, 2021, the Gadsden Airport Authority announced it would be holding its regular monthly meeting four days later. Later that afternoon, Dynamic moved for a temporary restraining order, asserting that the Gadsden Airport Authority planned to approve the sale or lease of the airport property to Pilgrim's at the November 19 meeting. The state court granted the motion and restrained the Gadsden Airport Authority and Pilgrim's from:

1. Signing, executing, or taking any other action to enter into any agreement to sell, lease or otherwise allow the use of the [airport] property . . . for the purposes of construction and/or operation of a rendering plant as being in violation of governing deed restrictions; and

2. Signing, executing, or taking any other action to enter into an agreement to contract to convey, deed, lease or otherwise allow the use of the GAA property . . . for the purposes of construction and/or operation of a

rendering plant without receiving full approval from the Federal Aviation Administration.

Key to the state court's decision to enter a TRO was a restrictive covenant in the 1947 deed conveying the airport property from the United States to Gadsden. According to this deed provision, the transferred property "shall be used for public airport purposes, and only for such purposes." Doc. 1-5 at 2. And the deed excluded from the definition of 'public airport purposes' use of the property "for manufacturing or industrial purposes." *See id.*

Following the entry of the TRO, Dynamic amended its complaint to include allegations related to the deed restrictions discussed in the state court's order. Dynamic specifically brought claims for declaratory and injunctive relief based on the 1947 deed's requirement that the property "be used for public airport purposes" and a provision in a 2004 deed from Gadsden to the Airport Authority that conveyed the property "subject to all easements, conditions, and restrictions of record . . . in deeds from the United States of America to the City of Gadsden." Doc. 1-6 at 9. Within these two new counts, Dynamic also alleged that the Airport Authority couldn't sell or lease its property to Pilgrim's under the requirements of Ala. Code § 4-3-49, which is what Dynamic says gave Gadsden the authority to convey the airport property to the Airport Authority in 2004.

After Dynamic filed its amended complaint, Pilgrim's removed this case to this court for a second time, once again asserting federal question jurisdiction.

## STANDARD OF REVIEW

"Federal courts are courts of limited jurisdiction. They possess only the power authorized by the Constitution and statute." *Kokkonen v. Guardian Life Ins. Co. of Am.*, 511 U.S. 375, 377 (1994). For removal to be proper, this court must have subject matter jurisdiction over this case. *See Caterpillar Inc. v. Williams*, 482 U.S. 386, 392 (1987). And the court must resolve any doubts about removal in favor of remand. *See Burns v. Windsor Ins. Co.*, 31 F.3d 1092, 1095 (11th Cir. 1994); *Vestavia Hills v. Gen. Fidelity Ins. Co.*, 676 F.3d 1310, 1313 (11th Cir. 2012).

## ANALYSIS

In its notice of removal, Pilgrim's acknowledges that Dynamic hasn't asserted a federal cause of action. But Pilgrim's asserts that this court still has federal question jurisdiction over this case because Dynamic's claims present one of those rare circumstances where a state-law claim raises a disputed federal issue substantial enough to confer this court with federal question jurisdiction.

According to Pilgrim's, this case raises two disputed federal issues: (1) whether amendments to the Surplus Property Act of 1944 have extinguished the 1947 deed restrictions referenced in Dynamic's complaint; and (2) whether the FAA will close the Gadsden airport or revoke grants if the Airport Authority leases or sells its land to develop a rendering plant.

For this court to exercise federal question jurisdiction over Dynamic's state-law claims, the claims must (1) necessarily raise a stated federal issue, (2) that is actually disputed and (3) substantial, which (4) a federal forum may entertain without disturbing any congressionally approved balance of federal and state judicial responsibilities. *See Grable & Sons Metal Prods., Inc. v. Darue Eng'g & Mfg.*, 545 U.S. 308, 314 (2005). As explained below, Dynamic's claims don't satisfy the first, third or fourth element.

1. <u>Necessarily raised federal issue</u>: A plaintiff necessarily raises a stated federal issue when the federal issue is an essential element of one of its claims. *See id.* at 315. For example, in *Grable*, the Court held that the plaintiff's quiet title claim necessarily raised a stated federal issue when the plaintiff based its claim to superior title on the IRS's alleged failure to give proper notice before seizing property to satisfy a tax deficiency. *See id.* at 314–15.

Pilgrim's asserts that this case is "on all fours with *Grable*" because Dynamic's deed restriction claims question whether a federal statute and federal regulations prohibit use of the Airport Authority's property for a rendering plant. But the court finds that Dynamic's claims don't necessarily raise a stated federal issue for two reasons.

*First*, "a claim supported by alternative theories in the complaint may not provide the basis for federal question jurisdiction unless federal law is essential to

each of the theories." 13D CHARLES ALAN WRIGHT & ARTHUR R. MILLER, FEDERAL PRACTICE AND PROCEDURE § 1006 (3d ed. April 2021 Update); *see also Christianson v. Colt Indus. Operating Corp.*, 486 U.S. 800, 810 (1988) (discussing this rule under the patent jurisdiction statute). And Dynamic's deed restriction claims offer two theories for why the Airport Authority's deed prohibits the use of its property for a rendering plant. The first theory is that the 1947 deed's requirement that the property not be used for manufacturing or industrial purposes prevents Pilgrim's from operating the proposed rendering plant. According to Pilgrim's, this theory raises a federal issue because the 1947 deed imposed this restriction under the Surplus Property Act of 1944, which Congress has since amended to extinguish restrictions against using structures for industrial purposes.

Dynamic's second theory for why the Airport Authority's deed prohibits the use of its property for a rendering plant is that Gadsden conveyed the land to the Airport Authority under Ala. Code § 4-3-49. And Ala. Code § 4-3-49 allows municipalities to convey land to an airport authority only "[f]or the purpose of aiding and cooperating with the authority in the planning, development, undertaking, construction, extension, improvement or operation of airports, heliports and air navigation facilities and other facilities." *See* Ala. Code § 4-3-49. Pilgrim's doesn't argue that this second deed restriction theory presents a federal question. Nor could it successfully make that argument. And if the state court agrees with Dynamic's

interpretation of § 4-3-49, Dynamic could succeed on its deed restriction claims without proving that the requirement that the property not be used for manufacturing or industrial purposes is still valid under federal law. So Dynamic's right to relief under its deed restriction claims does not "***necessarily depend*** on resolution" of a federal question, which is required before this court can exercise federal question jurisdiction over this case. *See Franchise Tax Bd. of Cal. v. Constr. Laborers Vacation Tr.*, 463 U.S. 1, 28 (1983) (emphasis added).

*Second,* the well-pleaded complaint rule requires the court to determine federal question jurisdiction "from what necessarily appears in the plaintiff's statement of his own claim in the bill or declaration, unaided by anything alleged in anticipation of avoidance of defenses which it is thought the defendant may interpose." *Id.* at 10 (quotations and citations omitted). And though the state court proceedings and Pilgrim's notice of removal have touched on whether operating a rendering plant at the airport would cause the FAA to either close the airport or revoke grants, this issue isn't an essential element to any of the claims in Dynamic's operative complaint.

Nor does the court find the interpretation or application of the Surplus Property Act to be a necessary element of Dynamic's deed restriction claims. That is because the 1947 deed includes a restriction on use of airport property for manufacturing or industrial purposes. Nor is it disputed that Pilgrim's would operate

the chicken rendering plant for manufacturing or industrial purposes. What's disputed is whether amendments to the Surplus Property Act excuse the Airport Authority and Pilgrim's from having to comply with the deed restrictions.

So the Surplus Property Act issue is best characterized as a federal defense to Dynamic's deed restriction claims, not an essential element of those claims. *See Louisville & Nashville R.R. Co. v. Mottley*, 211 U.S. 49 (1908) (finding no federal question jurisdiction where plaintiffs expected railroad to point to newly enacted federal law that prohibited free transportation by railroads as defense to breach of contract claim when railroad had agreed to give plaintiffs free passes); *see also Franchise Tax Bd.*, 463 U.S. at 12 (Well-pleaded complaint rule "may produce awkward results, especially in cases in which neither the obligation created by state law nor the defendant's factual failure to comply are in dispute, and both parties admit that the only question for decision is raised by a federal . . . defense."). As a result, Dynamic's claims don't necessarily raise a stated federal issue.

2. Substantiality: Even if Dynamic's state-law claims necessarily raise federal issues, those issues aren't substantial enough to confer federal question jurisdiction on this court. The substantiality inquiry asks whether the federal issue is important "to the federal system as a whole." *Gunn v. Minton*, 568 U.S. 251, 260 (2013). And only a "slim category" of cases meets the substantiality requirement. *See Empire Healthchoice Assurance, Inc., v. McVeigh*, 547 U.S. 677, 701 (2006).

Pilgrim's asserts that the federal issues here are substantial because they bear on how the FAA administers its duties and whether it will close the Gadsden airport and revoke grants. In support of this argument, Pilgrim's points out that the substantial federal issue in *Grable* concerned how the IRS administered its duty to notify taxpayers that it would be seizing property to satisfy a tax deficiency. But unlike the plaintiff in *Grable*, Dynamic isn't alleging that acts of a federal agency violated federal law. Instead, Dynamic is—at most—alleging that an agreement between the Airport Authority and Pilgrim's to develop a chicken rendering plant on airport property would conflict with federal law. Dynamic has then questioned whether ***because of Defendants' actions*** the FAA would close the airport and revoke federal grants. So the issue of how the FAA administers its duties is only tangentially related to Dynamic's claims.

In addition, the resolution of the notice deficiency issue in *Grable* "would be controlling in numerous other cases." *Id.* at 700. And Pilgrim's—which bears the burden of proving jurisdiction—hasn't shown that resolution of how to apply the Surplus Property Act and federal regulations to the claims here would be determinative in any other case. Instead, how the statute and federal regulations apply to Defendants' ability to operate a rendering plant at their proposed location is the type of "fact-bound and situation-specific" issue that the Supreme Court has considered insufficient to establish federal question jurisdiction. *See Gunn*, 568 U.S.

at 263. In short, while the resolution of the federal issues discussed in Pilgrim's notice of removal are likely important to the parties, they aren't significant enough "to the federal system as a whole" to confer federal question jurisdiction over Dynamic's state-law claims. *See id.* at 260.

3. <u>Balance of judicial responsibilities</u>: *Grable*'s final requirement is that exercising federal jurisdiction over the state-law claim cannot upset "the federal-state balance approved by Congress." *Id.* at 258. Pilgrim's asserts that this case satisfies this requirement because the issues presented are "rare" and unlikely to "promulgate a flood of similar litigation in federal court." Doc. 1 at 16.

But other considerations suggest that state courts should be the ones responsible for resolving cases like this one. At its core, this case turns on whether the Airport Authority's property is an appropriate location for a chicken rendering plant. The answer to that question depends on interpreting Gadsden zoning ordinances and the restrictive covenants in the Airport Authority's deed. How to best allocate the use of land within its municipalities is of special concern to the State of Alabama. It is of little interest to this federal court, which must almost always defer to the zoning decisions of state and municipal officers. *See Nasser v. City of Homewood*, 671 F.2d 432, 441 (11th Cir. 1982). So "it is hardly apparent why a proper 'federal-state balance' would place [Dynamic's claims] under the complete governance of federal law, to be declared in a federal forum." *Empire Healthchoice*,

547 U.S. at 701. The court thus finds that it would contravene congressional intent for this court to exercise federal question jurisdiction over Dynamic's claims.

## CONCLUSION

In summary, federalism dictates that state courts generally be the ones to decide state-law claims. But in "rare" circumstances, such as those present in *Grable*, federal courts will have federal question jurisdiction over state-law claims that raise important, contested issues of federal law. *Grable*, 545 U.S. at 319–20. As explained above, the federal interests at play here do not "squeeze[ ] [this case] into the slim category *Grable* exemplifies." *See Empire Healthchoice*, 547 U.S. at 701. So the court lacks subject matter jurisdiction over this case.

The court will therefore enter a separate order that directs the Clerk to remand this case to the Circuit Court of Etowah County, Alabama.

**DONE** on December 20, 2021.

_____
**COREY L. MAZE**
UNITED STATES DISTRICT JUDGE